

# NUMBER 13-14-00494-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

REY ORTIZ,                                                                 Appellant,

v.

LUIS MANUEL SINGLETERRY,                                                    Appellee.

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant, Rey Ortiz, appeals a $28,500 award of attorney's fees assessed against

him and his attorneys in an election contest he filed against appellee Luis Manuel

Singleterry regarding the March 4, 2014 Democratic Primary Election for the 92nd District

Court of Hidalgo County, Texas.[1]  *See* TEX. ELEC. CODE ANN. § 232.002 (West, Westlaw through 2013 3d C.S.) ("Any candidate in an election may contest the election.").  We reverse and render.

## I. BACKGROUND

Ortiz was a candidate for judge of the 92nd District Court of Hidalgo County, Texas in the Democratic Primary Election.  The challenged election was held on March 4, 2014, and the final canvass was held on March 14, 2014.  During the voting in this election, a voter reported in a well-documented incident that his vote for one candidate in one of the races on the ballot repeatedly reflected as a vote for a different candidate on the voting machine he utilized.

On March 19, 2014, in response to the voting error report, the District Attorney of Hidalgo County impounded the voting machines and ballots used in the Democratic Primary Election in Hidalgo County.  *See id.* § 273.001(b) (West, Westlaw through 2013 3d C.S.).  On March 22, 2014, Ortiz filed his contest pursuant to the election code.  *See id.*  In his original petition, Ortiz alleged, in relevant part, as follows:

> 5.  This suit is brought for the purpose of contesting the Hidalgo County 92nd Judicial District Court, Democratic Primary Election.  Said election was held on March 4, 2014, and the Canvass was conducted on March 14, 2014 at which time the official election results were determined to be as follows:

| Candidate | Votes Received | Percent |
| --- | --- | --- |
| Miguel Wise | 5,145 | 12.35% |
| Luis Manuel Singleterry | 24,127 | 57.79% |

---

[1] This Court previously reversed and remanded the trial court's orders granting a plea to the jurisdiction in the underlying case and in a companion case.  *See Cuellar v. Maldonado*, Nos. 13-14-00228-CV & 13-14-00230-CV, 2014 WL 2158135, at *1 (Tex. App.—Corpus Christi May 16, 2014, no pet.) (mem. op.) (consolidated opinion).  By separate opinion issued this same date, this Court addresses the trial court's imposition of sanctions in the companion case.  *See Cuellar v. Maldonado*, No. 13-14-00491-CV, 2015 WL ___, at *_ (Tex. App.—Corpus Christi Mar. 5, 2015, no pet. h.) (mem. op.).

Rey Ortiz           12,466           29.86%

Contestee Luis Manuel Singleterry was declared the winner because he received more than 50% of the votes.

6.      Contestant will prove by clear and convincing evidence that a sufficient number of illegal votes were counted to affect the outcome of the election; that either through malfunction or illegal manipulation, voters who voted for one candidate had their votes re-cast for other candidates and that persons who voted for Rey Ortiz had their votes counted for one of the other candidates (Exh. A); election machines either malfunctioned or were illegally tampered with to affect the outcome of the election (Exhs. A & B); election officials or other persons officially involved in the administration of the election witnessed that election machines appeared to either malfunction or were tampered with so that the outcome of the election was affected (Exhs. B & C); many complaints were brought to the attention of the Hidalgo County Elections Administrator to raise doubts concerning the accuracy of the election results and of the functioning of the election machines *Id.*; the election process failed to count legal votes, and/or engaged in other fraud or illegal conduct or made mistakes that precluded an accurate count of the vote cast.

7.      Contestant would also aver that there were irregularities in the casting and counting of ballots in this election to the extent that the true outcome would result in the Contestant being declared the winner or that the true election result cannot be ascertained, thereby requiring the voiding of the election and the need for a new election.

8.      Contestant would also aver that the election machines used in the election be inspected by the appropriate expert or authority designated by the Court to determine if the election machines were either faulty or were tampered with so that the true outcome of the election was affected.

Exhibit A to the petition was an incident report completed by Benito Garza detailing that he attempted to vote for Rene Guerra in the district attorney's race; however, the voting machine he utilized repeatedly cast his vote in favor of Guerra's opponent. After seeking assistance from voting officials, Garza's vote was canceled, and he utilized a different machine to cast his vote.

3

Exhibit B to the petition consisted of an affidavit from Richard Alvarez, an executive assistant to the Hidalgo County Judge. He stated that the first day of early voting in the Democratic primary election commenced on February 18, 2014. Early that morning, he received a call informing him that a voting problem had occurred at Precinct 3. He immediately went to the polling site. Upon arrival, Alvarez was informed that voter Benito Garza had cast a vote in the race for Hidalgo County District Attorney for the incumbent Rene Guerra, but upon review of the ballot, he discovered that the voting machine indicated a vote for Guerra's opponent. Alvarez was told and he verified that an election judge at the polling site had witnessed the above described occurrence and that Garza had attempted numerous times to cast his vote for Guerra, but the voting machine continued to list his vote as having been cast for Guerra's opponent.

Alvarez stated that he recommended to the election judge at the polling place that the voting machine used by Garza be segregated and removed from service so that it could be examined and the cause for the malfunction be determined. Garza was allowed to vote on a separate machine, and the malfunctioning machine was taken out of commission. However, the election judge then informed the Hidalgo County elections division about the issue. The Elections Division sent an employee to examine and recalibrate the voting machine. The voting machine was recalibrated and placed back in use.

Exhibit C to Ortiz's petition consisted of several letters sent to the Hidalgo County Judge requesting an investigation into the accuracy of the voting machines. One of the letters was signed by several individuals and stated that it "has been brought to our attention that numerous inconsistencies and discrepancies have appeared in our analysis of each candidate's races. We therefore ask that a forensic expert inspect each voting

4

machine to ensure that they have not malfunctioned or been subjected to fraud or tampering." The letter explained that the "integrity of the voting process is what is at issue. We ask that you take appropriate action to ensure that this and future elections will be without question."

In response to the contest, Singleterry filed a plea to the jurisdiction, which was granted by the district court. Ortiz appealed that order, and we reversed and remanded. *Cuellar v. Maldonado*, Nos. 13-14-00228-CV & 13-14-00230-CV, 2014 WL 2158135, at *1 (Tex. App.—Corpus Christi May 16, 2014, no pet.) (mem. op.) (consolidated opinion).

Subsequently and during the course of the election contest, Ortiz attempted to obtain access to the voting machines by attempting to intervene in the proceedings initiated by the district attorney's office, resulting in the impoundment of the voting machines, and by seeking permission to allow his own expert to examine the machines. His requests were denied. The trial of this cause was reset three times in order to obtain the results of the forensic examination of the voting machines.

The forensic report on the voting machines was not issued until August 5, 2014. The report found "no evidence to conclude that tampering had occurred" with any of the voting machines. On August 13, 2014, the parties appeared for trial, and in view of the forensic report, Ortiz nonsuited his case. The parties proceeded to hear Singleterry's request for attorney's fees and sanctions against Ortiz. After an evidentiary hearing, the trial court awarded Singleterry $28,500 as attorney's fees against Ortiz and his attorneys, jointly and severally, and further awarded costs of court and post-judgment interest.

This appeal ensued. Ortiz raises four issues: (1) the trial court lacked the authority to issue the challenged order in this case because he had filed a timely, mandatory objection to the assignment of the trial court; (2) the trial court lacked the authority to grant

5

attorney's fees in an election contest given that the election code does not authorize an award of attorney's fees and no other authority authorizing such an award exists; (3) assuming that the attorney's fees awarded were sanctions, the trial court erred in granting the sanctions because Singleterry did not file a pleading seeking sanctions; and (4) the trial court erred in granting attorney's fees as sanctions because Singleterry failed to meet his burden under any statute or rule authorizing sanctions and failed to meet his burden to prove the amount of attorney's fees was reasonable and necessary.[2]

## II. ELECTION CONTESTS

The focus of a trial court's inquiry in an election contest is set out in section 221.003(a) of the election code as follows:

(a)     The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not true because:

   (1)     illegal votes were counted; or

   (2)     an election officer or other person officially involved in the administration of the election:

      (A)     prevented eligible voters from voting;

      (B)     failed to count legal votes; or

      (C)     engaged in other fraud or illegal conduct or made a mistake.

TEX. ELEC. CODE ANN. § 221.003(a) (West, Westlaw through 2013 3d C.S.). "To set aside the outcome of an election, the contestant must prove by clear and convincing evidence

---

[2] Ortiz's brief was filed on December 5, 2014. On February 23, 2015, this Court set the case for submission on February 26, 2015 pursuant to the appellate rules. *See* TEX. R. APP. P. R. 39.8 (delineating the requirements for the appellate clerk to provide notification of the date that a case is set for submission); *Id.* R. 2 (allowing appellate courts to suspend a rule's operation in a particular case and order a different procedure). On February 24, 2015, Singleterry filed an amended motion for leave to file his brief and tendered his brief to the Court that same day. We grant leave and accept Singleterry's brief as filed.

that a violation of the election code occurred and such violation materially affected the outcome of the election." *Duncan–Hubert v. Mitchell*, 310 S.W.3d 92, 97–98 (Tex. App.—Dallas 2010, pet. denied); *see Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777–78 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.); *see also Regalado v. Munoz*, No. 13-14-00274-CV, 2014 WL 3542056, at *2 (Tex. App.—Corpus Christi July 17, 2014, no pet.) (mem. op.); *Vazaldua v. Muñoz*, No. 13–14–00275–CV, 2014 WL 2937014, at *6 (Tex. App.—Corpus Christi June 20, 2014, no pet.) (mem. op.). An election's outcome may be materially affected when a different and correct result would have been reached in the absence of irregularities, or if irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will. *Duncan–Hubert*, 310 S.W.2d at 98; *see Gonzalez*, 251 S.W.3d at 778; *see also Vazaldua*, 2014 WL 2937014, at *6.

It is an undeniable feature of our political system and tradition that an "individual's right to vote . . . is protected as a fundamental right." *Veasey v. Perry*, No. 13–CV–00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), *stayed by* 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) (citing *Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992); *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)). Specifically with regard to the facts of this case, we note that several federal circuits have held a "voting machine malfunction is the paradigmatic example of a 'garden variety' election dispute." *See, e.g., Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005); *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978); *Hennings v. Grafton*, 523 F.2d 861, 864–65 (7th Cir. 1975); *see also Broyles v. State of Tex.*, 618 F.Supp.2d 661, 694 (S.D.Tex. 2009).

### III. OBJECTION TO ASSIGNMENT

In his first issue, Ortiz contends that the trial court lacked the authority to issue any orders in this case because he had filed a timely, mandatory objection to the assignment

7

of the trial judge. Ortiz contends that chapter 74 of the Texas Government Code, which establishes the procedures for the appointment of judges, applies to this case, and thus the trial court's recusal was automatic once he timely objected.

Following this Court's remand of this case to the trial court, the Presiding Judge of the Fifth Administrative Judicial Region, the Honorable J. Rolando Olvera, assigned the Honorable J. Manuel Bañales to hear the case. On June 2, 2014, Ortiz filed an objection to the assignment of Judge Bañales. On June 3, 2014, Judge Olvera overruled the objection as per the following order:

> Each Contestant, MARLA CUELLAR and REY ORTIZ, in the above captioned causes, has filed an Objection to Assignment against Judge J. Manuel Bañales, Senior Judge, the Judge assigned to each cause. Each objection was filed under § 74.053 of the Government Code.

> These two causes are election contests brought under § 231 and § 232 of the Election Code. In an election contest, the judge of the judicial district in which an election contest is filed is automatically disqualified from presiding in the cause. Section 231.004(b), Elec. C., requires that the Presiding Judge of the Administrative Judicial Region shall then appoint a special judge to preside in the contest. The assigned judge must not reside in the territory covered by the election contest. Judge Bañales does not reside in the territory covered by the election contest. Judge Bañales was assigned under § 231.004(b), Elec. C.

> Section 74.053(a) and (b), Govt. C., provide that a party in a civil case may file an objection to a judge assigned "to a trial court *under this chapter*" [emphasis added]. Judge Bañales was not assigned under [c]hapter 74 of the Government Code. The plain language of §74.053, Govt. C., provides that an objection under § 74.053, Govt. C., applies *only* to an assignment under [c]hapter 74 of the Government Code. Accordingly, the Contestants' objections must be overruled.

> IT IS THEREFORE ORDERED that the Contestants' objections to the assignment of Judge J. Manuel Bañales in these election contests be and are each OVERRULED.

> Section 74.053 of the Texas Government Code provides:

> (a)     When a judge is assigned to a trial court *under this chapter*:

(1)     the order of assignment must state whether the judge is an active, former, retired, or senior judge; and

(2)     the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b)     If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case.  Except as provided by Subsection (d), each party to the case is only entitled to one objection under this section for that case.

(c)     An objection under this section must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier.  The presiding judge may extend the time to file an objection under this section on written motion by a party who demonstrates good cause.

(d)     An assigned judge or justice who was defeated in the last primary or general election for which the judge or justice was a candidate for the judicial office held by the judge or justice may not sit in a case if either party objects to the judge or justice.

(e)     An active judge assigned under this chapter is not subject to an objection.

(f)     For purposes of this section, notice of an assignment may be given and an objection to an assignment may be filed by electronic mail.

(g)     In this section, "party" includes multiple parties aligned in a case as determined by the presiding judge.

TEX. GOV'T CODE ANN. § 74.053 (West, Westlaw through 2013 3d C.S.) (emphasis added).

If a properly filed objection under this statute is timely, the assigned judge's disqualification is automatic.  *Id.* § 74.053(b); *In re Canales*, 52 S.W.3d 698, 701 (Tex. 2001) (orig. proceeding); *In re Honea*, 415 S.W.3d 888, 890 (Tex. App.—Eastland 2013, orig. proceeding).

Ortiz contends that the procedures set out in chapter 74 have been consistently applied to assignments made in election contest cases, and thus Judge Bañales should

9

have been automatically disqualified from hearing the election contest. In support of this contention, Ortiz cites *Flores v. Banner*, 932 S.W.2d 500, 501 (Tex. 1996) (per curiam), and *Flores v. Velasco*, 68 S.W.3d 86, 87 (Tex. App.—Dallas 2001, no pet.). These cases are election contests. However, neither case addresses the applicability, or lack thereof, of the chapter 74 procedures to recusals in election contest cases.

Section 74.053 states explicitly that it applies "*when a judge is assigned under this chapter.*" *See* TEX. GOV'T CODE ANN. § 74.053 (emphasis added). In accordance with the statutory language, this section has been held to be applicable *only* when a judge is assigned by the presiding judge of the administrative judicial region pursuant to chapter 74. *See Cabrera v. Cedarapids Inc.*, 834 S.W.2d 615, 617(Tex. App.—Houston [14th Dist.] 1992, *writ denied as improvidently granted*, 847 S.W.2d 247 (Tex. 1993); *Erbs v. Bedard*, 760 S.W.2d 750, 755 (Tex. App.—Dallas 1988, orig. proceeding); *R.J. Gallagher Co. v. White*, 709 S.W.2d 379, 381 (Tex. App.—Houston [14th Dist.] 1986, no writ); *see also In re Flores*, 53 S.W.3d 428, 431 (Tex. App.—San Antonio 2001, no pet.) (holding that presiding judge of the administrative district who was hearing a recusal motion was not subject to a section 74.053 objection); *Gonzalez v. Ables*, 945 S.W.2d 253, 254 (Tex. App.—San Antonio 1997, no pet.) (holding that statutory procedures under section 74.053 were not applicable where judges exchanged benches under state constitutional provision for judges to hold courts for each other when they deem it expedient); *Weidner v. Marlin*, 937 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no writ) (concluding that visiting judge's assignment was pursuant to government code section 75.003; therefore, the judge was not assigned by the presiding judge of the administrative judicial region and a section 74.053 objection to the assignment was not appropriate); *State ex rel. Holmes v. Lanford*, 837 S.W.2d 705, 710 (Tex. App.—Houston [14th Dist.] 1992, orig.

10

proceeding) (explaining that a party cannot "object under section 74.053 . . . to a judge who is not otherwise assigned to the case in accordance with the provisions of the [c]hapter 74"); *Meuth v. Hartgrove*, 811 S.W.2d 626, 628 (Tex. App.—Austin 1990, writ denied) (concluding that a section 74.053 objection does not apply to assignment of trial judge by county administrative judge rather than presiding judge of the administrative judicial region).

In the instant case, Judge Olvera assigned Judge Bañales to hear the case pursuant to the provisions of the election code rather than chapter 74. Accordingly, the section 74.053 objection was not applicable, and Judge Bañales was not automatically disqualified by virtue of Ortiz's objection. We overrule Ortiz's first issue.

## IV. BASIS FOR ATTORNEY'S FEES AWARD

In his second issue, Ortiz contends the trial court lacked the authority to grant attorney's fees because the election code does not authorize an award of attorney's fees and no other authority authorizes such an award. In his third issue, Ortiz argues that, assuming the attorney's fees were awarded as sanctions, the trial court erred in granting the sanctions because Singleterry did not file a pleading seeking sanctions. We address these issues together.

We review a trial court's decision to either grant or deny attorney's fees under an abuse of discretion standard. *See Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Hudspeth Cnty. Underground Water Conservation Dist. No. 1 v. Guitar Holding Co.*, 355 S.W.3d 428, 435 (Tex. App.—El Paso 2011, pet. denied). Texas adheres to the American Rule for the award of attorney's fees, under which attorney's fees are recoverable in a suit only if permitted by statute or by contract. *See 1/2 Price Checks Cashed v. United Auto. Ins.*

11

*Co.*, 344 S.W.3d 378, 382 (Tex. 2011); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006).

The trial court's order awarding the attorney's fees states, in relevant part:

> As in any case, the award of sanctions, attorney's fees or costs must be pled in the party's petition or answer or in a motion for sanctions. Except in a limited number or actions, without a filed pleading or motion for sanctions, attorney's fees or costs, a party is not entitled to recover on any of these items. In addition, a party may recover only what he or she pleads for.
>
> The Court finds that Contestee SINGLETERRY's claim for attorney's fees or costs is found in his Original Answer, in which he makes a general claim for attorney's fees or costs, but did not ask for sanctions. He did not amend his Answer to include a sanctions award nor did he file a motion for sanctions. His claim is therefore limited to attorney's fees or costs.
>
> . . . .
>
> Robert Salinas, attorney for Contestee SINGLETERRY, testified on his client's claim for sanctions, attorney's fees and costs. The record details his work on the case. In sum, for the amount of hours that he worked on the case at his hourly rate, he requested attorney's fees of $28,500.00 and costs of court. He also requested sanctions from Contestant ORTIZ and his counsel, Rolando Rios, in the amount of $25,000.00. However, it is not necessary to discuss Mr. Salinas' testimony in support of his claim for sanctions, because his claim for sanctions is not supported by his pleadings or by motion.
>
> The Court will award Contestee SINGLETERRY attorney's fees of $28,500.00 and costs of court. The Court will deny Contestee SINGLETERRY any award for sanctions against the Contestant or his counsel.
>
> . . . .
>
> IT IS FURTHER ORDERED that, in Cause No. C: 2191-14-A, in the cause Rey Ortiz v. Luis Manuel Singleterry, in the 92nd District Court of Hidalgo County, Contestee LUIS MANUEL SINGLETERRY be and is hereby awarded attorney's fees in the amount of $28,500.00 and that Contestant REY ORTIZ and his attorneys, Rolando Rios, Jose Garza and Martin Golando, are jointly and severally liable for sanctions and attorney's fees in the amount of $28,500, all costs of court, and post-judgment interest

on this entire amount from today's date at the rate of 5% until satisfied, for which let execution issue.

Singleterry's answer to the election contest includes a request for attorney's fees "as allowed by law" but provides no authority for the request. There is no statute or rule authorizing the award of attorney's fees in this matter. Accordingly, to the extent that the trial court's order could be considered as an award of attorney's fees, the trial court abused its discretion in rendering the award. *See 1/2 Price Checks Cashed*, 344 S.W.3d at 382; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 120; *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 310–11. We thus sustain Ortiz's second issue and proceed to address his third issue contending that the trial court erred if it awarded the attorney's fees as sanctions.

As stated in the trial court's order, Singleterry did not file pleadings requesting sanctions against Ortiz. Nevertheless, the trial court's order inconsistently denied sanctions on this ground and yet referred to the award of "sanctions and attorney's fees." Based on the language of the order at issue in this appeal, it is apparent that the trial court did not intend to award the attorney's fees to Singleterry as sanctions "because his claim for sanctions is not supported by his pleadings or by motion."

The purpose of pleadings is to give an adversary notice of claims, defenses, and the relief sought. *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 64–65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Chevron Phillips Chem. Co.*, 346 S.W.3d at 64; *see* TEX. R. CIV. P. 301 (providing that the "judgment of the court shall conform to the pleadings").

13

On appeal, Singleterry contends that he "*did* file an independent written motion for sanctions." Our review of the clerk's record indicates that Singleterry filed a "Brief in Support of Contestee's Request for Attorney's Fees, Costs, and Sanctions" the day *after* the trial court rendered the sanction order at issue in this case. There is no indication in the record that the trial court allowed leave for this untimely filing, and accordingly, we do not consider it herein as a basis for the imposition of sanctions. *See, e.g., Rodriguez v. Crutchfield*, 301 S.W.3d 772, 775 (Tex. App.—Dallas 2009, no pet.); *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 735 (Tex. App.—Texarkana 2003, no pet.); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 132 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Singleterry also contends that the imposition of sanctions should be affirmed because the issue was tried by consent. The "trial by consent" doctrine is only intended to cover the "exceptional" case in which it "clearly" appears from the record as a whole that the parties tried the unpleaded issue; it is not intended to establish a general rule of practice and should be applied with care. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.); *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.); *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). To determine whether the issue was tried by consent, we examine the record, not for evidence pertaining to the issue, but rather for evidence that the issue was actually tried. *Guillory*, 442 S.W.3d at 690; *Greene*, 174 S.W.3d at 301. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was present in the case, and the other party failed to make an

appropriate complaint. *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 567 (Tex. App.—San Antonio 2011, no pet.). When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should generally not be applied. *Johnston*, 9 S.W.3d at 281.

The evidence introduced at the August 13, 2014 hearing resulting in the order at issue herein was relevant to both a pleaded issue, Singleterry's request for attorney's fees, and the unpleaded request for sanctions. Moreover, the sanctions hearing was a consolidated proceeding in which the trial court also heard the companion case which involved specific pleadings seeking sanctions. In short, the evidence pertaining to attorney's fees was not developed under circumstances indicating that both parties understood that the issue of sanctions was being tried. *See id.* Based on the foregoing and the trial court's express language concluding that Singleterry's claim was "limited to attorney's fees or costs" rather than sanctions, we conclude that this is not an "exceptional" case where the "trial by consent" doctrine is "clearly warranted" to support an award of sanctions. *See, e.g., Prize Energy Res., L.P.*, 345 S.W.3d at 567; *Greene*, 174 S.W.3d at 301; *Johnston*, 9 S.W.3d at 281.

Singleterry further contends that we should affirm the trial court's imposition of sanctions on grounds that the trial court had the authority to sua sponte issue the sanction order. While the trial court can sua sponte award sanctions, the trial court did not provide the parties with notice prior to the hearing that it intended to utilize its inherent power to do so. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding) (per curiam); *Pine v. Deblieux*, 405 S.W.3d 140, 150 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In the absence of such notice, the trial court erred if it awarded the fees as

15

sanctions. *See TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *Shilling v. Gough*, 393 S.W.3d 555, 560 (Tex. App.—Dallas 2013, no pet.); *Magnuson v. Mullen*, 65 S.W.3d 815, 823 (Tex. App.—Fort Worth 2002, pet. denied). Accordingly, to the extent that the trial court's order could be construed as an award of sanctions, we conclude that the award was unsupported by the pleadings, and we sustain Ortiz's third issue.

## V. CONCLUSION

Having sustained Ortiz's second and third issues, we need not address his fourth issue. *See* TEX. R. APP. P. 47.1, 47.4. We reverse the trial court's order and render judgment that Singleterry take nothing on his claim for attorney's fees.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
5th day of March, 2015.

16